UNITED STATES of America,

v.

Lennis Luther PRICE.

Cr. No. 15657.

United States District Court,
E. D. Tennessee, N. D.

Nov. 30, 1954.

John C. Crawford, Jr., U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

Chas. H. Davis, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

In memorandum opinion filed June 22, 1954, D.C., 122 F.Supp. 593, defendant's motion for a new trial was granted. An order was filed on the same date putting into effect the conclusion reached in the memorandum opinion. The defendant thereafter moved to withdraw his plea of not guilty, which was granted. A motion to quash the indictment upon the ground that the indictment failed to charge in any of its three counts that the defendant was either the employer ·or was given the power by the employer to "hire or fire the persons from whom he is alleged to have extorted money."

This motion, resisted by the Government, was recently set down for oral argument and at the conclusion of the argument, overruled.

On November 26, 1954, defendant moved for an order requiring the Government to furnish him a bill of particulars respecting the charges in the indictment, (1) as to the date defendant was made foreman of lathers by his employer, Tennessee Valley Authority, at its Kingston plant and his period of service as foreman; (2) the character of authority possessed by the defendant as foreman to hire and fire employees belonging to the lathing group; and, (3) if defendant did not possess the power to hire and fire, what weight, if any, would be given his recommendation by the Tennessee Valley Authority?

The Government responded to the motion for a bill of particulars on the day that it was filed in the following language:

"1. The defendant, Lennis Luther Price, was employed by the Tennessee Valley Authority on September 28, 1953, as Lather Foreman and held such position until June 25, 1954, when he was terminated by the Tennessee Valley Authority. During the period May 6, 1954 and June 25, 1954, the defendant was on enforced leave without pay. The defendant as Lather Foreman was paid at the rate of $2.90 per hour while journeymen employees on defendant's crew were paid at the rate of $2.65 per hour.

"2. The defendant did not have any authority to hire or fire employees on his lathing crew.

"3. The defendant's personal recommendation as to hiring of personnel would carry no weight. All employees at the Kingston Steam Plant have to complete a Tennessee Valley Authority application and fulfill the other regular Tennessee Valley Authority requirements.

"The Tennessee Valley Authority would fire an employee on defendant's crew if the defendant advised the Tennessee Valley Authority that such employee should be fired for cause. The Tennessee Valley Authority, however, would first inquire of the employee if he had been treated fairly as an employee.

"Dated this 26th day of November, 1954."

Thus, it is shown by the indictment as implemented by the bill of particulars that although defendant was designated as foreman of the lathers by his employer, he did not have the power or authority to hire or fire employees who worked with him as members of the lathing group. A recommendation from him that a person or persons be hired or fired would not carry any weight with his employer. If he advised his employer that an employee should be fired for cause, the employer, before taking action, would first inquire of the employee if he had been treated fairly. If the employer, after an examination, found that the employee had been treated fairly and that cause existed for termination of his employment an order of discharge would be made.

It is clear from the foregoing that defendant was not vested with the power to interfere with the contractual relation between the employees from whom he is alleged to have wrongfully collected funds and their employer in relation to their respective contracts of employment.

For the reasons stated in the memorandum opinion sustaining defendant's motion for a new trial, and upon the decisions of the Supreme Court therein cited, the Court concludes that the defendant's motion to dismiss the case must be sustained.

In addition, the following language of Mr. Justice Black in the case of United States v. Laudani, 320 U.S. 543, 545, 546, 548, 64 S.Ct. 315, 316, 88 L.Ed. 300, is pertinent:

"The Circuit Court of Appeals [3 Cir., 134 F.2d 847] pointed out, however, that if the word 'whoever' be given its broadest scope the Act might include common blackmailers who have no relationship to their victims' employment. In an effort to avoid what it considered to be such an extreme application of the Act, the Court focused attention on the clause 'to give up any part of the compensation to which he is entitled under his contract of employment.' Viewing this clause as proof that the purpose of Congress was to protect the employees' contractual rights to receive wages from their employer, the Court reasoned that no one but the employer or one acting on his behalf possessed 'the requisite privity of contract' with the employees to be capable of impairing these rights. Having thus emphasized the Congressional reference to a 'contract of employment', the Court stated broadly that, 'What happens to the compensation after the employee has received it in full, and wholly without relation to or effect upon his contract of employment is a matter with which this statute does not purport to deal.'

* * *

"The Court's statement might have been pertinent had the indictments here been against a common blackmailer, extortioner, or *some other person not alleged to have been vested by the employer with the power to fix and terminate the employer-employee status.* But we think that the coerced surrender of wages by employees at the instance of a company foreman given authority by his employer to hire and discharge them cannot properly be said to bear no relation to or have no effect upon their contracts of employment, especially where, as here alleged, the surrender of wages was induced by the foreman's express threat to dismiss all employees who did not comply with his demand. Execution of such a threat against employees unwilling to pay

would immediately and completely have terminated their employment contracts. We find nothing in the Act which suggests that, under these circumstances, a foreman must be deemed incapable of violating its provisions merely because he may not stand in that relationship to employees which the Circuit Court characterized as 'privity of contract.' * * *

"To hold that a company foreman vested with sufficient power substantially to affect his subordinates' contracts of employment is within the Act's proscription is not to hold that the Act applies to every extortioner, blackmailer, or other person who extracts money from one who has previously received it for labor on a federally financed project. We need not, at this time, attempt to delineate the outside scope of the Act's application. But the purpose of the legislation, no less than its language, shows that the power to *employ* and *discharge* brings an employing company's foreman within its prohibition." (Emphasis supplied.)