UNITED STATES of America,
Appellant,

v.

Lennis Luther PRICE, Appellee.

No. 12426.

United States Court of Appeals
Sixth Circuit.

July 7, 1955.

Leo Meltzer, Washington, D. C., Warren Olney, III, Leo Meltzer, Washington, D. C., John C. Crawford, Jr., John F. Dugger, Knoxville, Tenn., on the brief, for appellant.

Charles H. Davis, Knoxville, Tenn., for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

Appellee was indicted on three counts for violating the so-called "Kickback" Act, 18 U.S.C. § 874. That statute reads as follows:

"Whoever, by force, intimidation, or threat of procuring dismissal from employment, or by any other manner whatsoever induces any person employed in the construction, prosecution, completion or repair of any public building, public work, or building or work financed in whole or in part by loans or grants from the United States, to give up any part of the compensation to which he is entitled under his contract of employment, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

The first count of the indictment charged:

"* * * that during the period between October 8, 1953, and March 24, 1954, there was under construction, prosecution and completion in Roane County, Tennessee, a certain public building and public work known as the Kingston Steam Plant of the Tennessee Valley Authority, said construction, prosecution and completion being wholly financed by grants from the United States of America; that the defendant, Lennis Luther Price, was then and there employed as foreman in charge of lathers engaged on said construction;

"That on or about March 24, 1954, within the Northern Division of the Eastern District of Tennessee, the defendant did unlawfully induce one Rubel Estel Simmons, who was then and there employed as a lather on said construction, to give up the sum of One Hundred and Fifty Dollars ($150.00), a part of the compensation to which the said Rubel Estel Simmons was entitled under his contract of employment, in the following manner:

"The defendant did represent to the said Simmons that he was authorized and entitled to collect from the said Simmons the sum of $2.00 for every day that the said Simmons worked, for the purpose of paying such money to a labor organization, to wit, Local 255, Wood, Wire and Metal Lathers Union, for the issuance of a work permit to the said

Simmons; but in fact, neither the defendant nor any other person was authorized to collect any sum of money from the said Simmons by said labor organization, for the issuance of a work permit or any other purpose; and the defendant did not make payment to said labor organization of the money so received, but converted it to his own use."

The other two counts of the indictment charged the same offense with respect to two other named employees.

In response to appellee's motion, the United States furnished a bill of particulars, stating, in part, as follows:

"2. The defendant did not have any authority to hire or fire employees on his lathing crew.

"3. The defendant's personal recommendation as to hiring of personnel would carry no weight. All employees at the Kingston Steam Plant have to complete a Tennessee Valley Authority Application and fulfill the other regular Tennessee Valley Authority requirements.

"The Tennessee Valley Authority would fire an employee on defendant's crew if the defendant advised the Tennessee Valley Authority that such employee should be fired for cause. The Tennessee Valley Authority, however, would first inquire of the employee if he had been treated fairly as an employee."

The district court granted appellee's motion to dismiss the indictment, stating in a memorandum opinion that appellee "was not vested with the power to interfere with the contractual relation between the employees from whom he is alleged to have wrongfully collected funds and their employer in relation to their respective contracts of employment." [127 F.Supp. 484.]

Relying upon the cases of United States v. Carbone, 1946, 327 U.S. 633, 66 S.Ct. 734, and United States v. Laudani, 1944, 320 U.S. 543, 64 S.Ct. 315, 88 L. Ed. 300, the district court was of the view that "A reasonable construction to be placed upon the Act and upon the Supreme Court opinions herein mentioned is to the effect that the evil against which employees were intended to be protected was deprivation of some right which the employee had under his employment contract by the employer or persons placed in positions of authority by the employer, and that the Act was not intended to protect employees from racketeers within the ranks of labor or fellow-employees engaged in their own private schemes of blackmail." [122 F.Supp. 595.]

From the district court's order granting appellee's motion to dismiss the indictment, the United States has brought this appeal under the provisions of 18 U.S.C.A. § 3731, sixth paragraph.[1]

It is the government's contention that the district court misconstrued the indictment as implemented by the bill of particulars in concluding that it failed to allege that appellee was "vested with the power to interfere with the contractual relation between the employees * * * and their employer." The government further contends that the district court's conclusion that the reach of the Kickback Act is in effect limited to employers and those whom they have clothed with the authority to hire and discharge employees was erroneous.

As to the government's first contention, we agree that the indictment as implemented by the bill of particulars does allege some power on the part of the appellee to interfere with the relationship between the employees over whom he was placed as foreman and their employer. Though the appellee had no right himself either to hire or fire these employees, and was without power even to influence the decision as to hiring them, the employer "would fire an employee on defendant's crew if the defendant advised the employer that such employee should be fired for cause." In view of

---

1. Between the indictment and the order of dismissal there intervened various proceedings which are without relevance to this appeal.

this allegation, we think that the district court's conclusion that appellee lacked "power to interfere with the contractual relation between the employees * * * and their employer" was incorrect. While it is true that the bill of particulars states that before discharging an employee upon appellee's advice the employer "would first inquire of the employee if he had been treated fairly as an employee," that fact falls short of obliterating appellee's influence upon the employment relationship.

The question thus becomes whether or not the statute is broad enough to cover a foreman without power to hire or fire, but with power to influence the discharge of those employees whom he allegedly induced to give up part of the compensation to which they were entitled. It is obvious that the literal words of the statute are sufficiently broad: "Whoever * * * by any * * * manner whatsoever induces any person employed in the construction * * * of any * * * public work * * * financed * * * by * * * the United States, to give up any * * * part of the compensation to which he is entitled under his contract of employment, shall be fined * * * or imprisoned * * *." It is equally obvious, both from the legislative history and the Supreme Court decisions, that the scope of this language is not so broad as a literal reading would suggest.

As pointed out by the district court, the two Supreme Court decisions which illuminate the statute here involved are United States v. Laudani, 1944, 320 U.S. 543, 64 S.Ct. 315, 88 L.Ed. 300, and United States v. Carbone, 1946, 327 U.S. 633, 66 S.Ct. 734, 90 L.Ed. 904. In both opinions the Supreme Court discussed the history of the legislation, originally enacted during a large public works program at the depth of the depression "to insure that workers on federal projects shall receive the full wages to which they are entitled from their employers, many of whom had been found to be depriving the workers of their rights in this respect." United States v. Carbone, 327 U.S. at page 639, 66 S.Ct. at page 737.

It was held in the Carbone case that the statute did not reach union officials who collected contributions from employees for union initiation fees even though the officials failed to account to the union for payments made by employees who quit before paying the initiation fees in full. As the Court was careful to emphasize in the Carbone case, it was bound by the district court's interpretation of the indictment as "dealing only with ordinary union initiation fees * * *." 327 U.S. at page 641, 66 S.Ct. at page 738. See United States v. Borden Co., 1939, 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181. "The indictment in the Carbone case, according to the trial court's construction as interpreted by the Supreme Court, described the activities of the accused in such a manner as to show that they were simply collecting union dues or fees according to union rules, a lawful activity not proscribed by the statute." United States v. Alsup, 5 Cir., 1955, 219 F.2d 72, 74.

In short, the Carbone case seems to stand simply for the proposition that legitimate union activity is not within the purview of the Kickback Act, even though within its literal terms, and even though the union officials are guilty of dishonesty towards employees or toward their union. The present case is thus not within the ambit of the Carbone decision. Here it affirmatively appears that the appellee was without any authority to collect any money from the employees on behalf of a union. Cf. United States v. Alsup, supra.

In the Laudani case the Supreme Court held that "the coerced surrender of wages by employees at the instance of a company foreman given authority by his employer to hire and discharge them * *, especially where * * * the surrender of wages was induced by the foreman's express threat to dismiss all employees who did not comply with his demand" was conduct proscribed by the statute. 320 U.S. at page 546, 64 S.Ct.

at page 316. The Court in that case expressly refrained from attempting "to delineate the outside scope of the Act's application", but made clear that the Act does not apply "to every extortioner, blackmailer, or other person who extracts money from one who has previously received it for labor on a federally financed project." 320 U.S. at page 548, 64 S.Ct. at page 317.

It seems to be implicit in the Supreme Court's opinion in the Carbone and Laudani cases that, to come within the statute, one who extracts money from employees must have power to affect the employment relationship, and that the money must be paid in return for the exercise of that power in a way favorable to the employee. How direct the power over the employment relationship must be, and how explicit the *quid pro quo* with respect to the payment extracted, are the questions which bring the present case close to the "outside scope of the Act's application."

In the Laudani opinion the Court summarized its decision as holding that "a company foreman vested with sufficient power substantially to affect his subordinates' contracts of employment is within the Act's proscription. \* \* \*" 320 U.S. at page 548, 64 S.Ct. at page 317. It also pointed out that "Foreman vested with full power to employ and discharge subordinates could frustrate the objective of the Act just as effectively as could their employers, *and foremen not given such broad powers might nevertheless be able to use their authority to accomplish the same result.*" 320 U.S. at page 547, 64 S.Ct. at page 317. We think the allegations of the indictment as implemented by the bill of particulars bring the present case within the scope of these expressions of the Supreme Court. The appellee was no stranger to the employment contracts of those from whom he allegedly extracted tribute. The extent of his power over their continued employment was not insignificant.

■ While there is no specific allegation that the employees were induced to make payments to the appellee by his express threat to procure their dismissal if they did not do so, the words of the indictment make clear that the employees were allegedly made by appellee to understand that if they wanted to work for the employer they were obligated to pay the appellee $2.00 for every day that they did so.

The order of the district court dismissing the indictment is accordingly set aside, and the case is remanded to that court for further proceedings.